UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CHRISTOPHER EDMUNDS,**

       **Plaintiff,**        **CIVIL ACTION NO. 09-CV-13076**

  vs.

                           **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED, Defendant's Motion For Summary Judgment (docket no. 11) be GRANTED and the instant Complaint DISMISSED.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of December 9, 2004 alleging that he had been disabled since April 3, 2003 due to bipolar disorder. (TR 46-48, 51, 54). The Social Security Administration denied benefits. (TR 36-40). Administrative Law Judge Regina Sobrino (ALJ) held a de novo hearing on April 30, 2007 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability within the meaning of the Social Security Act at any time from April 3, 2003 through the date of the ALJ's May 22, 2007 decision. (TR 17-22). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action

for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was 56 years old at the time of the ALJ's decision. He has a bachelor of arts degree and has work experience in automotive assembly. (TR 221). Plaintiff testified that he last worked on April 3, 2003, he lost his job after he threatened his supervisor and he has a pension. (TR 221). When asked what prevents him from working, Plaintiff testified that "it will violate the terms of my disability," he was burned out and he no longer has the drive or attention to detail. (TR 222). Plaintiff also reported that he is not able to handle the stress of a full time job. (TR 55).

Plaintiff testified that he lost his driver's license in July 2003 due to drunk driving. (TR 222). He walks or takes the bus for transportation and does his own shopping. (TR 222-23). Plaintiff attends AA approximately once every two months. (TR 223). He testified that he has no physical problems. (TR 222). He does his own chores including cooking, cleaning and laundry, but he testified that very little gets done because he paces and becomes immobilized by his environment. (TR 223). He also testified that the tasks get finished "eventually." (TR 223). He takes care of his own paperwork, such as paying bills and doing his taxes. (TR 70). Plaintiff testified that he used to have hobbies such as jewelry making, painting and playing golf but now he cannot "stay with it, or it is ungratifying." (TR 224). He testified that he takes a nap approximately once per day for two hours. (TR 226).

2

Plaintiff testified that he sees both a psychologist and psychiatrist and that he has not been hospitalized or gone to the emergency room since he stopped working. (TR 224). He testified that he takes Lamictal and Lithium without side effects and that they help. (TR 225). Plaintiff testified that he was hospitalized in May 2003 for cocaine and alcohol dependence although he stated that there was only sporadic cocaine use, not habitual. (TR 225). Plaintiff received his third drunk driving offense on July 7, 2005. (TR 225).

**B.      Medical Evidence**

Only mental impairments are at issue. Throughout the record Plaintiff repeatedly denies physical impairments and there is no challenge to the ALJ's finding that Plaintiff does not have physical exertional limitations. (TR 22, 172, 222). Plaintiff treated with psychiatrist Jame. T. S. Rhyee, M.D., from June 25, 2003 through August 2004 and from January 2005 through November 2006 and Dr. Rhyee provided a Medical Source Statement dated April 4, 2007, as set forth in detail below. (TR 93-110, 199-212, 213). On intake, Dr. Rhyee noted Plaintiff's complaints of depression and angry outbursts. (TR 102-09). Dr. Rhyee made a tentative diagnosis of bipolar II disorder and noted a history of alcohol abuse. (TR 102). He prescribed Lamictal, Neurontin and naltrexone and reduced Plaintiff's Paxil. (TR 102).

Plaintiff also attended therapy with a psychologist through the Insight program from June 2003 through December 2004 to work on substance abuse issues. (TR 121-67, 122-23). On intake, the provider noted Plaintiff's report that he drinks "too much." (TR 159). Throughout this time the treatment provider noted Plaintiff's occasional reports of being angry and also reported Plaintiff as being "subdued" and "not as agitated as he was previously." (TR 129, 132-34, 142).

Plaintiff underwent a psychological evaluation with Walter R. Drwal, PhD., LLP, on March 4, 2005. (TR 168-79). Plaintiff reported that he had no difficulty caring for his own physical health.

3

He reported that he takes Lithium, Lamictal and Ambien and that without his Lithium he would be manic, he would "blow-up," and be "hyper" and agitated. (TR 171). Plaintiff reported that he had one psychiatric hospitalization and outpatient therapy in 1977 following a suicide attempt. (TR 172). Dr. Drwal noted that Plaintiff reported some substance abuse difficulties and Plaintiff's statement that "my wife wants me to be sober now, so I am doing that and staying out of the bars." (TR 173). Dr. Drwal noted that Plaintiff reported multiple reprimands directly related to substance use, including one OUIL in 1991 and two in 1995. (TR 176). Dr. Drwal reported that Plaintiff's attention was within normal limits with no gross deficits noted, memories were intact and abstract reasoning and critical thinking skills were not yet developed. (TR 177). Dr. Drwal reported that "[i]nsight is not noted based (sic) his assertion that he cannot work, despite his abilities." (TR 175).

Dr. Drwal reported the diagnosis as a historical diagnosis of bipolar disorder by Dr. Rhyee and assigned a GAF of 81. (TR 179). Dr. Drwal concluded that "[t]here is nothing presented that would socially or psychologically prevent Mr. Edmunds from seeking, obtaining, and maintaining gainful employment" and the results of the evaluation "did not reveal difficulties that would preclude [Plaintiff] from engaging in gainful employment, despite the fact that he states he cannot compete because of the alleged disabilities." (TR 179).

Kaul Ashok, M.D., completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique dated March 22, 2005. (TR 180-97). Dr. Ashok diagnosed bipolar disorder (12.04), obsessive compulsive personality disorder (12.08), and a history of alcohol and cocaine abuse (12.09). (TR 192). Dr. Ashok found mild and moderate limitations in the mental activity categories and found that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace and has had no episodes of decompensation of extended duration. (TR 180-82, 194). Dr. Ashok

reported that Plaintiff "has moderate limitations in the ability to remember and carry out detailed instructions, maintain concentration for extended periods, get along with supervisors and coworkers, and respond appropriately to changes in work setting." (TR 182). The doctor concluded that Plaintiff is "able to understand, remember and carry out simple instructions on a sustained basis" and is "[c]apable of unskilled work." (TR 182).

  **C.** **Vocational Expert**

The Vocational Expert (VE) testified that Plaintiff's past work as an automobile assembler was medium in exertion and unskilled. (TR 229). Plaintiff also worked as a final inspector which was semi-skilled and light in exertion and a general repairer which was semi-skilled and medium in exertion. (TR 229-30). The ALJ asked the VE to consider an individual with a Bachelor of Arts degree, the same work experience as Plaintiff and born in 1951, who is limited to performing simple, routine and repetitive work, is able to tolerate superficial contact with co-workers and supervisors but should not perform work that involves dealing with the general public. The ALJ clarified "superficial contact" as not involving confrontation or negotiation, allowing a brief exchange of information with co-workers bringing materials, leaving materials and picking them up, but where the individual should not have to work in tandem with another person to complete their job duty. (TR 231). The VE testified that such an individual could not perform the past work as inspector and repairer because they are semi-skilled. (TR 231). Such an individual could not perform automobile assembler because the position tends to involve work as part of a team. (TR 231).

The ALJ further added an exertional limitation to medium (including light) work. The VE testified that such an individual could perform work as a janitor (medium exertion, approximately 6,500 jobs in the region defined as the lower two-thirds of Michigan and 198,000 nationally), kitchen helper (medium, 2,900 jobs in the region and 93,000 nationally), machine feeder (medium,

5

1,600 jobs in the region and 92,000 nationally) and hand packer (medium 3,400 jobs in the region and 117,000 nationally). (TR 232). The VE testified that employers can tolerate absences of twelve per year or one day per month, with some employers able to tolerate two absences per month. (TR 233). The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 233).

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through December 31, 2008, had not engaged in substantial gainful activity since his alleged onset date of April 3, 2003 and suffers from bipolar disorder and a history of substance abuse in remission, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 19). The ALJ found that Plaintiff had the residual functional capacity to perform simple, routine, repetitive work that does not involve interacting with the general public, negotiation or confrontation, but may include superficial contact with co-workers and supervisors. (TR 20). The ALJ found that Plaintiff is unable to perform his past relevant work but he can perform other work that exists in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (TR 21-22).

### V. LAW AND ANALYSIS

#### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work

experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff makes two arguments. First, Plaintiff argues that the ALJ's RFC and hypothetical question to the VE limiting Plaintiff to "simple, routine, repetitive work" did not accurately account for Plaintiff's moderate limitation in maintaining concentration, persistence and pace. Second, Plaintiff argues that the ALJ failed to properly evaluate the opinion of treating psychiatrist Dr. Rhyee. The Court will take these arguments in reverse order.

**C.    Analysis**

*1.    Whether The ALJ Properly Considered Treating Psychiatrist Dr. Rhyee's Opinion*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Rhyee. (Docket no. 10 pp. 14-15). Plaintiff's brief is general in this allegation. Plaintiff states that the "ALJ does discuss Dr. Rhyee's opinion about Mr. Edmunds' marked limitations in certain areas, but the ALJ does not discuss why the opinion of Mr. Edmunds' treating psychiatrist was, obviously, discounted." (Docket no. 10 p. 14). Plaintiff refers to a Medical Source Statement dated April 4, 2007, and it is that opinion which the will Court address.

8

Plaintiff argues that the limitations related to his mental impairments as set forth in Dr. Rhyee's opinion are more severe than the limitations found by the ALJ. Dr. Rhyee completed a Medical Source Statement (Mental) dated April 4, 2007 and concluded that Plaintiff is markedly limited in the following: (1) the ability to relate and interact with supervisors and co-workers, (2) the ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, (3) the ability to maintain concentration and attention for at least two hour increments and (4) the ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity. Dr. Rhyee found that Plaintiff was extremely limited in the ability to handle funds. (TR 213). The doctor found that Plaintiff was "not significantly limited or unknown" in the ability to understand, remember and carry out simple one or two step job instructions and mildly limited in the ability to deal with the public. (TR 213). The doctor reported that the above limitations have existed for "at least 10-20 years," that drug addiction or alcoholism had contributed "moderately" to these limitations and that Plaintiff was "not drinking since 2 years ago." (TR 213). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001);

*see also* 20 C.F.R. § 404.1527(e)(1). The ALJ is required, however, to give the reasons for the weight she assigned to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ followed the prescribed rules for evaluating Plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520a. The ALJ acknowledged that Dr. Rhyee is a treating psychiatrist and specifically considered his opinions. (TR 19). The ALJ recited and adopted Dr. Rhyee's diagnosis of bipolar II disorder, diagnosed as early as 2003 and re-stated on the April 4, 2007 Medical Source Statement. (TR 19, 102, 213). The ALJ then measured the severity of the mental disorders in terms of four functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits. See 20 C.F.R. § 404.1520a(c)(3). The ALJ determined that Plaintiff has mild limitations in activities of daily living, moderate limitations in social functioning and in maintaining concentration, persistence and pace and that "[t]here have been extended episodes of decompensation since the alleged onset date."[1] (TR 20). The ALJ noted that Plaintiff's mental impairment "imposes significant limitations in his ability to work." (TR 20).

In making these findings, the ALJ considered Dr. Rhyee's opinions and the other evidence of record. The ALJ noted that Dr. Rhyee "reports marked limitations in relating to others in a work setting, maintaining concentration and withstanding the stress and pressure of work." Plaintiff pointed out that the ALJ in her decision stated that "[t]hese limitations are significantly associated with substance abuse that has been in remission for more than two years." (TR 21). Plaintiff argues that "[t]he limitations that Dr. Rhyee placed on Mr. Edmunds were given in 2007, which was four

---

[1] Episodes of decompensation have not been raised as an issue in Plaintiff's motion. It is worth noting that this may be a typo as the statement does not indicate how many episodes there have been and Plaintiff himself testified that he has not been hospitalized since his employment ended. (TR 224). The medical records do not show hospitalizations or other episodes of decompensation (other than notes of Plaintiff's self-reports following an attempted suicide in the 1970's and a later drinking and driving episode). (TR 172).

years after he began treating Mr. Edmunds and two years after Mr. Edmunds ceased to drink alcohol." (Docket no. 10 p. 15). Plaintiff's argument ignores Dr. Rhyee's statement that the alcohol abuse "moderately" contributed to these same limitations. (TR 213). The ALJ properly pointed this out as one of the reasons for the weight given to Dr. Rhyee's opinion. The ALJ's attribution of the severity of Dr. Rhyee's limitations to the history of substance abuse is supported by substantial evidence and is consistent with Dr. Rhyee's statement that the alcohol abuse "moderately" contributed to the limitations[2].

The ALJ did not stop there, however. She further explained the weight given to Dr. Rhyee's opinion by pointing out that in a psychological evaluation from March 2005, Dr. Drwal assigned a GAF of 81. (TR 179). The ALJ also noted that Plaintiff takes medication which does not produce side effects. (TR 21). Substantial evidence supports these findings. Plaintiff testified that his medication is helpful. (TR 211). Dr. Rhyee's notes from mid-2005 through 2006 show that Plaintiff was reported as "stable." In June 2006 Dr. Rhyee reported that Plaintiff was taking Lamictal and noted Plaintiff's report that he was doing better in controlling his temper and was having fewer mood swings. (TR 200). The ALJ also pointed out that Plaintiff can engage in activities of daily living, including maintaining his household, shopping, using public transportation, watching television and reading the newspaper and that he has friends with whom he associates. (TR 19, 21). This is consistent with Plaintiff's testimony and Dr. Drwal's report. (TR 72-73, 173, 223). As set forth in further detail below with respect to the RFC, the Court notes that the ALJ's RFC also accounts for Dr. Rhyee's opinion regarding Plaintiff's limitations. The ALJ gave good reasons for

---

[2]The Court also notes that the categories on Dr. Rhyee's Medical Source Statement are not the same categories in the regulations, although there is some overlap in language.

her findings with respect to the weight given to the opinions of record and her findings are supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2).

2. *Whether the ALJ's RFC and Step Five Determination Is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's RFC and hypothetical question to the VE limiting Plaintiff to "simple, routine, repetitive work" did not accurately account for Plaintiff's moderate limitation in maintaining concentration, persistence and pace. Plaintiff relies on *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003) for the proposition that a hypothetical question that described the clamant as requiring "'simple work' was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner." *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003) (citations omitted).

The difference in this instance is that there is no evidence of record that Plaintiff would have more than a moderate limitation in concentration, persistence or pace or that Plaintiff's limitations would manifest in the failure to complete tasks in a timely manner. Dr. Rhyee opined that Plaintiff was markedly limited in the ability to maintain concentration and attention for at least two hour increments, but, as set forth above, alcoholism moderately contributed to the severity of this limitation and the ALJ's findings regarding Plaintiff's mental limitations are supported by substantial evidence. (TR 213). The ALJ did not find that Plaintiff had a marked limitation in concentration, persistence or pace or would often suffer deficiencies this area.

Plaintiff argues that a "moderate" limitation is equivalent to "often" under the Commissioner's prior regulations and relies on *Bankston v. Comm'r of Soc. Security*, 127 F.Supp.2d 820 (E.D.Mich.2000). Since *Bankston*, 20 C.F.R. 404.1520a was amended to encompass a five-level

12

scale based on severity rather than frequency of the limitation, as set forth in the scale evaluated in *Bankston*. *See Brewer v. Comm'r of Social Security*, 2008 WL 719228 at *5 (E.D.Mich.2008). To the extent *Bankston* applied under the old version of § 404.1520a, it is inapplicable to the current regulation and "an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant 'often' has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment." *Id.* at *5.

The RFC limiting Plaintiff to simple, routine and repetitive work is consistent with Dr. Rhyee's finding that Plaintiff is "not significantly limited" in the ability to understand, remember and carry out simple one or two step job instructions, yet is markedly limited in the ability to do the same on "an extensive variety of technical and/or complex job instructions." There is additional evidence of record that despite limitations, Plaintiff could understand, remember and carry out simple job instructions, according to Dr. Rhyee, and did not have difficulties that would preclude gainful employment, according to Dr. Drwal. (TR 179, 213). Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple duties requiring little or no judgment. 20 C.F.R. 404.1568(a) (2008).

Although the RFC contains a limitation to "simple, routine, repetitive" work, the ALJ went beyond this limitation to include in her RFC finding all of Plaintiff's mental limitations which were supported by substantial evidence. With respect to Dr. Rhyee's opinion that Plaintiff is markedly limited in the ability to relate and interact with supervisors and co-workers, the ALJ's RFC limits Plaintiff to only superficial contact with co-workers and supervisors and further limits him from performing work that "involves confrontation or negotiation." (TR 20, 213). Dr. Rhyee opined that

13

Plaintiff was mildly limited in the ability to deal with the public; the ALJ's RFC provides that Plaintiff "cannot perform work that involves interacting with the general public"[3]. (TR 20).

With respect to Dr. Rhyee's opinion that Plaintiff is markedly limited in both the ability to maintain concentration and attention for at least two hour increments, and ability to withstand the stress and pressures associated with an eight-hour work day and day to day work activity, the ALJ gave good reasons for finding more moderate mental limitations, as set forth above. Dr. Drwal did not report difficulties in orientation, memory, attention, calculation and abstract thinking and concluded that Plaintiff's evaluation revealed no difficulties that would preclude Plaintiff from working. (TR 176-79). As the ALJ pointed out, Plaintiff was able to maintain his own household, shop, use public transportation, read the newspaper and watch television. (TR 21). Furthermore, Plaintiff reported that his medication helped and he had no side effects. The ALJ's RFC accurately portrayed Plaintiff's limitations and was supported by substantial evidence.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ presented all of the limitations of the RFC in her hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available

---

[3]Plaintiff's argument that the limitations set forth in the RFC relating to contact with co-workers, supervisors and the general public and the need to avoid work that involves confrontation or negotiation "were given in light of the finding that Mr. Edmunds is moderately impaired in the social functioning" is without support in the record or legal support. (Docket no. 10).

for a person with these limitations. The ALJ's decision that Plaintiff retained the RFC for a restricted range of work is supported by substantial evidence and the ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform.

**VI. CONCLUSION**

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 10) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 11) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 17, 2010          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 17, 2010          s/ Lisa C. Bartlett
                                Case Manager